[No. 3,731.]

# FRANK HIGGINS, SAMUEL HIGGINS, AND JANE F. GOLDSTONE v. SOLOMON HIGGINS, ANN HIGGINS, THOMAS KELLY, AND EDWIN J. CHRISTIAN.

GIFT FROM HUSBAND TO WIFE.—If the husband purchase an estate and pay for it out of the common property, and cause it to be conveyed to the wife by a deed of bargain and sale, with intent that it shall become her separate property, it operates as a gift from the husband to the wife.

EVIDENCE THAT DEED TO WIFE WAS DEED OF GIFT.—Although prima facie a bargain and sale deed of property to the wife makes it common property, yet the wife may show by extrinsic evidence that it was intended as a deed of gift, and that it is her separate property, and such evidence does not contradict or vary the deed.

CLAIMING A SECOND HOMESTEAD.—A widow to whom the Probate Court has set apart a homestead out of the estate of her deceased husband, may, if she afterwards marries, claim a second homestead under the general Homestead Act, on the estate of her second husband.

HOMESTEAD IN LAND HELD AS TENANT IN COMMON.—If a husband owns an undivided interest in land, as a tenant in common with others, and is living on it with his family, his wife may claim a homestead on it to the extent of the husband's undivided interest, and to the extent in value of five thousand dollars.

PARTITION OF LAND ON WHICH THERE IS A HOMESTEAD.—On a partition of land held by tenants in common, if one of them has a homestead claim on it, his undivided interest will be set apart to satisfy the homestead claim, not to exceed five thousand dollars in value.

APPEAL from the District Court of the Third Judicial District, City and County of San Francisco.

Ejectment to recover a lot on Howard street, San Francisco, twenty-five feet front by one hundred and ten feet deep. The plaintiffs were the children of Solomon Higgins by his first wife. Solomon Higgins, on the 8th day of April, 1872, deeded the demanded premises to the plaintiff Goldstone.

On the trial the plaintiffs proved by Solomon Higgins that he ordered Pioche to make the deed to Hulda, his first wife,

and that he intended it as a gift to her and to be her separate property, and that he so informed her at the time.

The defendants Kelly and Christian were tenants of Ann Higgins. The defendants recovered judgment in the Court below, and the plaintiffs appealed.

The other facts are stated in the opinion.

*P. B. Ladd,* for Appellants.

The right to acquire and hold as against creditors a homestead, is a constitutional and statutory right. Neither the Constitution nor the statute give or contemplate the holding of but one homestead by the same party. (Section 15, Article XI, State Constitution, Hittell's General Laws, Title "Homestead," Sec. 1.)

The object of the law is to secure from forced sale one homestead and place of abode for the head of a family; not so much to protect such head as to protect those who depend on that head for their support.

But in the case at bar the deed not showing on its face that Hulda was a married woman, the law, in the absence of parol proof thereof, presumed her single, and as such presumed that she held both the legal and equitable title; to overcome which presumption this defendant Ann was in a position where she had to invoke the aid of parol proof to establish Hulda's marriage, whereby another presumption of law was raised that Hulda held the legal title in trust; and to overcome this presumption the plaintiffs introduced parol proof, not to contradict or vary the terms of the deed, but to support its very language. (*Jackson* v. *Lodge,* 36 Cal. 53, 54.)

And to show a gift from Solomon to Hulda, and that he ordered the deed made to her as such gift. This he could do. (*Peck* v. *Vandenburgh,* 30 Cal. 53.) The gift so made being legal and binding as to him, will be equally binding on his heirs, and on his second wife, Ann; for they claim

through him, and occupy no better position in this respect than he does. (*Peck* v. *Brummagim*, 31 Cal. 445–47.) It may be claimed that as one third of this property, on the death of Hulda, descended to Solomon, that Ann, his second wife, could secure a homestead to the extent of that interest. To which claim we answer as follows: A homestead cannot be carved out of property held by tenants in common. (6 Cal. 416; 23 id. 514; 27 id. 418; 37 id. 655.) And the possession of one tenant in common does not change the rule. (32 Cal. 481, 483–4.) The statute passed March 9th, 1868 (p. 116), has not and could not enlarge her rights in this respect. It provides that the owner of an undivided interest, who is in the exclusive occupation, may have a homestead to the extent of his interest therein. In the case at bar, the wife had no interest.

*C. G. Howard* and *Daingerfield & Olney*, for Respondents.

Can the plaintiff, upon a simple complaint in ejectment, without any allegation of error in the recitals of a deed, prove that a deed which purports to be a deed of bargain and sale, is in fact one of gift from a husband whose name does not appear as a grantee therein?

The records did not disclose any title in the plaintiffs at the time Ann Higgins claimed the homestead; and she stands in the actual occupancy, and in all equity entitled to the ownership and possession. This claim plaintiffs seek to overturn by showing a legal title in themselves. To do this, they offer a deed made by Pioche, a stranger, to Hulda, the former wife of Solomon Higgins, and from Solomon Higgins to plaintiff Goldstone. Now, it must be apparent that the interest conveyed by the deeds upon their faces was not a legal title. There was no conveyance from Hulda Higgins to her husband, hence the deed from Solomon to Jane Goldstone, without oral evidence, conveyed nothing. So that there was no legal title or equitable right shown in the

plaintiffs till it was disclosed by the verbal evidence on the trial.

It has been decided time and again by our Courts, that in ejectment, plaintiff must recover on a legal title; that an equitable one will not sustain ejectment. (32 Cal. 458; id 481, and cases cited.) Deed must be reformed. (21 Cal. 122; 13 Cal. 116; 21 Cal. 220.)

Under any view of the law that can be taken, Solomon Higgins, the husband, had an interest in the land, and Ann Higgins, being the wife, and having declared her homestead upon it, had a right to her possession, and no suit could be instituted against her till after demand to be let into possession. (*Ewald* v. *Corbett*, 32 Cal. 493; *Carpentier* v. *Mitchell*, 29 Cal. 330.)

By the Court, CROCKETT, J.:

It appears from the finding that the demanded premises were purchased by the defendant Solomon Higgins from Pioche for nine hundred dollars, during the lifetime of Hulda, the wife of said Higgins; that the purchase money was paid out of the common property of said marriage; that at the request of the husband, and by way of gift from him, and with the intention on his part that the same should become her separate estate, the property was conveyed by Pioche directly to the wife by a deed of bargain and sale reciting a consideration of nine hundred dollars; that the wife afterwards died intestate during the lifetime of the husband, leaving the plaintiffs as her heirs at law; that the husband subsequently intermarried with the defendant Ann Higgins; that thereafter, whilst residing on the premises with her husband, the said Ann duly filed and recorded a declaration claiming said premises as a homestead; after which her husband, Solomon Higgins, by a deed reciting love and affection as the consideration, conveyed the premises to one of the

plaintiffs ; and that ever since the filing of the declaration of homestead the defendant, Ann Higgins, has resided upon, claimed, and used said premises as a homestead. On these facts the Court entered a judgment for the defendants, on the ground : First—"That the plaintiffs as heirs at law of their deceased mother did not acquire by descent a right of entry on the demanded premises. If any right to said premises exists in them as such heirs, it is an equitable right which cannot be enforced in this action. Second—That they did not acquire a right of entry on said premises as grantees of their father, because their father could not legally convey it to them during the existence of the homestead upon it acquired by his second wife." It is well settled in this Court that if a husband purchase an estate and pay for it out of the common property, and cause it to be conveyed to the wife by a deed of bargain and sale, with the intent that it shall become her separate estate, the transaction will operate and be upheld as a gift from the husband to the wife. (*Peck* v. *Brummagim,* 31 Cal. 440 ; *Dow* v. *Gould & Curry S. M. Co.,* id. 653 ; *Ingersoll* v. *Truebody,* 40 id. 603 ; *Woods* v. *Whitney,* 42 id. 359.)

The doctrine of these cases is, that, prima facie, property conveyed to the wife by a deed of bargain and sale is common property, but that it is competent for the wife to show by extrinsic proofs the true character of the transaction, on establishing which the deed will be held to operate as a conveyance to her of a separate estate. It is held that such proof does not contradict or vary the written instrument, except in so far as it explains the consideration, which it is always competent to do, even in an action at law. (*Rhine* v. *Ellen,* 36 Cal. 362.) In *Ramsdell* v. *Fuller,* 28 Cal. 37, it was decided that it was not only competent for a wife claiming under a deed of this character to show that the purchase money was paid out of her separate estate, but that enough

appeared on the face of the deed to put a purchaser from the husband on inquiry as to the true state of the facts.

The Court below, however, appears to have proceeded on the theory that inasmuch as the deed on its face was prima facie a conveyance to the wife of common property, it was not competent, in an action at law, to overcome this presumption by proof of the extrinsic facts; and that the remedy of the plaintiffs, if any they had, was in a Court of equity. But the parol proof was directed wholly to the consideration, and not to the operative words of the conveyance. The legal effect of it was to show, in substance, that the husband had made a gift to his wife of the purchase money, and had invested it for her in this property, which he caused to be conveyed to her as her separate estate. In this way the presumption arising on the face of the deed that it was common property was overcome, as in the cases already cited, by proving that it was in fact her separate estate, purchased with money given to her by her husband for that purpose. The oral proofs in no respect contradicted, varied, or added to the words of the conveyance, which recited a valuable consideration paid by the *wife*, and conveyed the legal title to her. The sole object of the proof was to show that this recital was substantially true, and that the purchase money was furnished by the husband as a gift to the wife. The question is very different from that decided in *Jackson* v. *Lodge*, 36 Cal. 53, which has so often been questioned in subsequent cases as no longer to have the weight of authority. For these reasons I think the Court below erred in holding that the plaintiffs acquired no right of entry as heirs to their mother. But on the death of Mrs. Higgins, her surviving husband succeeded to a portion of her estate, and became a tenant in common with her children, the plaintiffs, to one of whom he has since conveyed all his interest.

The whole title, therefore, legal and equitable, is in the

plaintiffs, unless the operation of the deed from Solomon Higgins to Mrs. Goldstone has been defeated by the homestead claim filed by the defendant Ann Higgins. It appears from the bill of exceptions that Solomon Higgins and his wife, the defendant Ann Higgins, intermarried on the 4th February, 1870—she being then the widow of John Jones, deceased—and that, on the fifteenth of the same month, eleven days after her marriage with Higgins, the Probate Court, by a proper decree, set apart to her, as the widow of Jones, a lot and buildings in San Francisco out of the estate of Jones, as a homestead for the use and benefit of herself and the children of her marriage with Jones, of whom there are four; that the decree was duly recorded, and there is nothing to show that it has been annulled, or is not in full force. It further appears that there are no children of the second marriage. Whether the wife, under these circumstances, can claim a homestead in the estate of her second husband, is a novel question, for the first time presented to this Court.

It is said that if she can claim both, she will be protected in the enjoyment of two homesteads at the same time—a result which, it is claimed, was not contemplated by the statute. But it is to be observed that the homestead to be set apart under the Probate Act, for the use of the widow and minor children, is a mere reservation out of the property of the estate, for their benefit, and is for the use of the minor children as well as the widow. Under the general Homestead Act, however, the homestead goes to the wife alone, if she survives her husband; and her children by a former marriage would have no interest in it, while the children of her last marriage would have no interest in a homestead set apart from the estate of the first husband. Looking to the policy which dictated the two classes of

CAL. REPS. XLVI—34

homesteads, we think the fact that a homestead had been set apart from the estate of her former husband, for the use of Mrs. Higgins and her minor children, did not estop her from claiming a homestead out of the estate of her second husband. On the death of his former wife, intestate, Solomon Higgins succeeded, under the Statute of Distributions and Descents, to one third of the property, and the other two thirds descended to the plaintiffs, as the heirs at law of their mother. The only interest in which Mrs. Higgins could assert the right of homestead was the one undivided third part of the property derived by her husband from his deceased wife, and in that to an amount not exceeding five thousand dollars. Under the Act of March 9th, 1868 (Stats. 1867–8, p. 116), she was entitled to take up a homestead claim on his undivided one third interest ; and after the homestead claim was perfected, the husband, by his sole conveyance, could not defeat it. The plaintiffs, therefore, were entitled to recover two undivided thirds of the property, and to be let into the possession jointly with the defendant ; and, on a partition of the property, the one undivided third part would be set apart to satisfy the homestead claim, not to exceed five thousand dollars in value.

Judgment reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE did not express an opinion.