[No. 7,221.—Department Two.]

JOHN H. BREWER v. R. G. HOUSTON ET AL.

58  345
79  448
58  345
84  467
58  345
92   14
58  345
141  457
o141 458

CONSTRUCTION OF PATENT—MISTAKE—LOCATION—BOUNDARY.—In an action to quiet title, the plaintiff claiming under a State patent:

*Held*, That a mistake made in omitting to insert a course in the patent could not be corrected in this action.

APPEAL from a judgment and from an order denying a new trial in the Fifteenth District Court, County of Contra Costa. DWINELLE, J.

Action to quiet title. The plaintiff deraigned title under three swamp land patents, based respectively upon survey Nos. 115, 125, and 433. The description of the land in the first patent (Exhibit B) is as follows : The east half of south-east quarter, section eleven; south half of section twelve, township one south, range three east. Fractional south-west quarter, and fraction in west half of south-east quarter, section seven, township one south, range four east, and more particularly described in the field-notes of said survey as follows : Beginning at the north-west corner of the south-west quarter of section twelve (12), in township one (1) south, range three (3) east, Mount Diablo meridian; running thence east one hundred and fourteen and sixty-two one hundredths chains to Old River; thence south twenty-five degrees east thirty chains; thence south twelve and eighty-one one hundredths chains; thence west one hundred and forty-seven and thirty one hundredths chains; thence north forty chains, and thence east twenty chains to the point of beginning, and containing five hundred and seventy-one and ninety-five one hundredths (571 95-100) acres, run by the true meridian, magnetic variation sixteen degrees fifteen minutes east.

In the second patent (Exhibit D) the description was as follows : The north-east quarter of section thirteen, township one south, range three east; the fractional south-east quarter section seven, fractional north-west quarter section seventeen, and fractional north half section eighteen, township one south, range four east, and more particularly described in the field-notes of said survey as follows : Beginning at north-west cor-

ner of the north-west quarter of section eighteen (18), in township one (1) south, range four (4) east, Mount Diablo meridian, running thence east forty-six and thirty one hundredths chains on the bank of Old River; thence meandering up the river north forty-eight degrees east twenty-five chains, north eighty degrees east twelve chains, south twenty-five degrees west sixteen chains, south forty-five degrees east ten chains, north seventy degrees east twenty chains, south thirty degrees east forty-six and eleven one hundredths chains; thence west one hundred and fifty-eight and thirty-five one hundredths chains; thence north forty chains; and thence east forty chains to the place of beginning, and containing five hundred and eighty-three and eighteen one hundredths (583 18-100) acres; run by the true meridian; magnetic variation, sixteen degrees fifteen minutes east. And in the third patent (Exhibit G) the description was as follows: Fraction in south-west quarter section sixteen, south-west quarter and fractional south-east quarter section seventeen, and north-east quarter of south-east quarter section eighteen, and more particularly described in the field-notes of said survey as follows: Beginning at north-west corner of south-west quarter of section seventeen (17), in township one (1) south, range four (4) east, Mount Diablo meridian; running thence east thirty-eight and thirty-five one hundredths chains; thence south seventy degrees east forty-one chains; thence south twenty-five degrees east twenty-eight and sixty one hundredths chains; thence west eighty-nine chains; thence north twenty chains; thence west twenty chains; thence north twenty chains; thence east twenty chains to the point of beginning, and containing three hundred and thirty-six and twenty-four one hundredths (336 24-100) acres; run by the true meridian; magnetic variation, sixteen degrees fifteen minutes east.

The principal question relates to the third patent (Exhibit G). It appeared from the evidence that, under the instructions of the Surveyor-General, where an application for swamp lands had been rejected, upon a new application, the County Surveyors were required to follow the field-notes of the original survey, and to renumber it as a resurvey; and accordingly the survey upon which the third patent was issued (which was read

in evidence), is entitled " Survey No. 433, being a renumbering of survey No. 126 in old book." The original survey No. 126 was in evidence, and from it appeared that the calls of the same were identical with the calls of survey No. 433, as the same are set forth in the patent issued thereon, except that the first call of survey No. 126, instead of the words "running thence east thirty-eight and thirty-five one hundredths chains," was in the words and figures following, to wit, "running thence east thirty-eight and thirty-five one hundredths chains to *Old River*." This evidence was admitted by the Court over the exception of the defendants, but, upon the closing of the plaintiff's evidence, the Court granted a nonsuit.

*J. E. McElrath,* for Appellant.

The plaintiff's title is derived by patents in regular form from the State of California, and by mesne conveyances from the patentees. The defendants claim that the patents do not cover the lands lying between surveys No. 125 and 433, and Old River, as represented on the map attached to the transcript. The defendant also claims to be the owner of the land lying north of survey No. 125 and east of survey No. 115, and between those surveys and old River, as represented on the said map. The whole question before the Court turns on the construction of the three patents in evidence. The first two in express terms call for " Old River;" the one based on survey No. 433 is shown to be based on survey No. 126, of which No. 433 is a renumbering only, and that No. 126 called for Old River. Exhibit " D" has this language: "*Thence meandering up the river,*" etc. This is exactly the same in principle as "*ascending up the creek,*" which language in *Spring* v. *Hueston,* 52 Cal. 442, was held to control courses and distances which diverged from the creek. Giving this construction to the patent, Exhibit " D," it manifestly takes all the land lying between surveys No. 125 and north of the north line of No. 433 and Old River. A glance at the map will show that Old River is not reached by the first call in the patent, according to the map, if the defendant's construction is to be followed. We submit that the proper construction of the three patents gives the land to plaintiff, and in

support of our construction cite: *Winans* v. *Cheney,* 55 Cal.
567; *Winans* v. *Murray,* No. 3179 (not reported); *Black* v.
*Sprague,* 54 Cal. 266; *Harkins* v. *Nelson,* 53 id. 317; *Spring*
v. *Hueston,* 52 id. 442; *Ringstorf* v. *Guth,* 50 id. 87; *Serrano*
v. *Rawson,* 47 id. 55.

*L. B. Misner,* for Respondent.

The map is an important part of the patent, and in ques-
tions of location is often entitled to as much or more weight
than the courses and distances. (*Black* v. *Sprague,* 54 Cal.
266.)

The COURT:

We have examined the transcript in this cause, and find
no error in the ruling of the Court below. The nonsuit was
properly granted. If a mistake was made in failing to in-
sert a *course* in the patent issued to P. S. Van Rensselaer and
bearing date the 9th day of August, 1873, we can not see
how it can be corrected in this action.

Judgment and order affirmed